Submitted on the record October 25, ballot title referred to Attorney General
for modification December 6, ballot title certified as modified December 21, 2007
(343 Or 692)

# Larry WOLF
# and Jerry Caruthers,
*Petitioners,*

*v.*

# Hardy MYERS,
# Attorney General,
# State of Oregon,
*Respondent.*

## (SC S55264)

173 P3d 812

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition for petitioners.

Douglas F. Zier, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for a proposed initiative measure that the Secretary of State has denominated as Initiative Petition 114 (2008). The proposed measure would amend the Oregon Constitution to provide that no measure increasing or adding any new property tax "may be approved, except in a General Election or other election in which not less than sixty percent of the voters registered to vote * * * cast a ballot."[1]

■■  Petitioners are electors who timely submitted written comments to the Secretary of State concerning the Attorney General's draft ballot title and who therefore are entitled to seek review in this court of the resulting certified ballot title. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2)(a) to (d). ORS 250.085(5). In the present case, we conclude that the certified ballot title fails to comply in two respects. We therefore refer the ballot title to the Attorney General for modification.

The Attorney General certified the following ballot title:

"AMENDS CONSTITUTION: REQUIRES SUPER-MAJORITY IN SOME ELECTIONS TO APPROVE NEW, RENEWED, INCREASED PROPERTY TAXES, NEW BOND MEASURES

---

[1] The proposed measure would add the following section to the Oregon Constitution:

"Whereas voters should not be burdened with a property tax increase adopted in an election with low voter participation; and whereas the only election date routinely attracting more than 60 percent statewide voter turn-out is the regularly occurring General Election, therefore, on or after the effective date of this 2008 Amendment, no measure increasing ad valorem property taxes or imposing a new property tax, including any new bond measure, may be approved, except in a General Election or other election in which not less than sixty percent of the voters registered to vote in the relevant jurisdiction as of the date of the election cast a ballot. For purposes of this section, 'General Election' means an election held on the first Tuesday after the first Monday of November of an even numbered year. For purposes of this section, 'a new property tax' includes the renewal of an expiring property tax."

"RESULT OF 'YES' VOTE: 'Yes' vote allows voter approval of certain property tax and new bond measures only at election with sixty-percent voter participation or at general election.

"RESULT OF 'NO' VOTE: 'No' vote retains current law allowing approval of certain property tax, bond measures only at election with fifty-percent voter participation or at general election.

"SUMMARY: Amends constitution. Current law, commonly referred to as the 'double-majority' provision, requires that measures increasing property taxes or imposing new property taxes, including certain bonded indebtedness, can be approved only in election where at least fifty percent of registered voters cast ballots or in general election held in November of an even-numbered year; all other elections are determined by a majority of those who vote, with no voter turnout requirements. Property tax measures raise money for local government services, including schools, law enforcement, libraries, parks, other uses. Measure increases required voter turnout level from fifty percent to sixty percent of registered voters in an election, other than general election, that increases, imposes, or renews property taxes, or adopts new bond measures. Other provisions."

Petitioners challenge the Attorney General's caption, "yes" vote result statement, and summary. Petitioners' first objection to the caption concerns the way that the Attorney General uses the word "supermajority." The caption states, in part, that the proposed measure "[r]equires supermajority in some elections to approve new, renewed, increased property taxes, new bond measures." Petitioners argue that the reference to "supermajority" in the caption is misleading because it suggests that the proposed measure requires that new tax measures be *approved* by a supermajority, while the supermajority requirement in the proposed measure applies to voter *turnout*. The Attorney General does not disagree with petitioners' interpretation of the proposed amendment, but asserts that the caption is not likely to confuse voters. The Attorney General also points out that the other sections of the ballot title explicitly state that the supermajority requirement applies only to voter turnout.

We agree with petitioners. No one disputes that the supermajority requirement in Initiative Petition 114 applies to voter turnout and that the measure would not change the usual "simple majority" requirement for a tax measure to pass. With that understanding, we think it obvious that the wording in the caption that the measure "requires supermajority * * * to approve" certain taxes and bond measures is misleading. The measure does not change the "approval" requirement for those tax measures from a simple majority to a supermajority; rather, it changes the turnout requirement to a supermajority. Moreover, the accurate description of the proposed amendment in the other sections of the ballot title, while helpful, does not correct the misleading nature of the caption. See *Kain v. Myers*, 333 Or 497, 502-03, 41 P3d 1076 (2002) (rejecting Attorney General's claim that more detailed summary excused failure of caption accurately to describe subject matter of proposed measure).

■ Petitioners also challenge the statement in the certified caption that the supermajority turnout requirement applies "in some elections." As noted, the proposed measure would provide that no new property tax or increase in an existing property tax could be approved "except in a General Election or other election in which not less than sixty percent of the voters registered to vote * * * cast a ballot." Petitioners assert that the turnout requirement applies to *all* elections, while the Attorney General interprets the requirement to apply only to "other elections" and not to general elections. Because that disagreement over the proper interpretation of the measure underlies petitioners' challenge to the certified caption, we first discuss the parties' differing interpretations of the proposed measure and then examine petitioners' objection to the certified caption.

As noted, the Attorney General interprets the turnout requirement to apply only to "other election[s]" and not to a general election. The Attorney General first argues that the structure of the measure supports his conclusion because it parallels the existing constitutional requirement for certain local tax measures, which requires that such measures be approved in a general election *or* in an election in which at least 50 percent of registered voters vote. *See* Or Const, Art XI, § 11(8) (so providing). According to the Attorney General,

Initiative Petition 114 would increase from 50 percent to 60 percent the turnout requirement for local tax measures submitted to the voters at an election other than a general election, but, consistent with the existing provision, would not impose any turnout requirement on local tax measures submitted to the voters at a general election. Second, the Attorney General relies on the rule of the last antecedent to argue that the qualifying phrase "in which not less than sixty percent of the voters registered to vote * * * cast a ballot" modifies only the last antecedent—"other election"—and not the earlier words "General Election." *See Baker v. City of Lakeside*, 343 Or 70, 75, 164 P3d 259 (2007) (describing rule of last antecedent). Finally, the Attorney General argues that, if the drafters of the proposed measure had intended the turnout requirement to apply to all elections, there would have been no reason to mention both "general elections" and "other elections," and the measure simply would have described the turnout requirement as applying to "any" or "all" property tax elections.

Petitioners acknowledge that the drafters of Initiative Petition 114 may have *intended* that the turnout requirement apply only to elections other than general elections, but they argue that the words of the proposed measure impose that requirement on both kinds of elections. At a minimum, petitioners assert, the scope of the turnout requirement is ambiguous. Petitioners respond to the Attorney General's argument about the structure of the existing constitutional turnout requirement by pointing out that the proposed measure *does not* parallel Article XI, section 11(8), because it *does not* distinguish "general elections" from "other elections" by placing them in different subsections, as the existing constitutional provision does, or by utilizing some punctuation or grammatical device. Petitioners argue that, given the way the drafters structured the sentence, for the turnout requirement unambiguously to apply only to "other elections," and not to general elections, the proposed measure would have to set the reference to "other elections" apart as an independent clause by rewording the measure. For example, petitioners suggest, had the measure used the words "except in a General Election or *in* other elections in which not less than sixty

percent" of registered voters voted, the meaning would be unambiguous.

Based on their interpretation of the proposed measure, petitioners assert that the statement in the caption that the turnout requirement applies "in some elections" fails accurately to identify the subject of the measure. In the alternative, petitioners argue that the scope of the turnout requirement at least is uncertain and that the caption must identify that uncertainty. The Attorney General responds that petitioners' proposed interpretation of the measure is unreasonable and that his caption stating that the turnout requirement applies "in some elections" accurately describes the subject of the proposed measure.

Disputes about the proper interpretation of proposed initiative measures often arise in ballot title challenges. When parties reasonably dispute the meaning of a provision in a proposed measure, that dispute may lead to disagreement as to the subject of the measure, the result if the measure were to pass, and the effect of the measure—matters that must be described, respectively, in the caption, "yes" vote result statement, and summary of the ballot title. *See* ORS 250.035(2) (describing required contents of ballot title). This court consistently has declined to speculate—or to permit the Attorney General to speculate—about the possible effects of a proposed measure. *Pelikan / Tauman v. Myers*, 342 Or 383, 389, 153 P3d 117 (2007) (so stating). As to the interpretation of a proposed measure's provisions, this court has stated that "we do not predict or speculate about potential applied interpretations of a measure before the history of its adoption is complete." *Baker v. Keisling*, 312 Or 385, 394, 822 P2d 1162 (1991); *see also Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 41, 902 P2d 1143 (1995) ("[I]t is not the court's role to engage in an abstract exercise of pre-enactment constitutional interpretation.").

At the same time, we have recognized that the Attorney General's role in preparing a ballot title, and this court's role in reviewing the ballot title if it is challenged, "includes a certain amount of basic interpretation[,]" *Christ / Tauman v. Myers*, 339 Or 494, 500, 123 P3d 271 (2005), and we have expressly rejected some earlier cases suggesting that the

Attorney General must avoid any interpretation at all of a proposed measure. *Id. Christ / Tauman* underscores the obvious point that, although neither this court nor the Attorney General may speculate about the possible secondary effects of a proposed measure or adopt one of several plausible interpretations of the measure for purposes of the ballot title, the preparation of a ballot title necessarily requires some level of interpretation of the measure.

When confronted with the narrower problem of the meaning of a specific provision in a proposed measure that is subject to two or more plausible interpretations, we ordinarily have declined to choose (or to permit the Attorney General to choose) one of those interpretations for purposes of the ballot title. "When it appears that more than one reading of the wording of a contested measure is plausible, our precedents are clear that it is inappropriate for this court, at this stage, to resolve such an ambiguity in the measure." *Bartsch v. Kulongoski*, 322 Or 335, 339, 906 P2d 815 (1995). *See also Carson v. Myers*, 326 Or 248, 253, 951 P2d 700 (1998) (declining to "speculate among arguable meanings of [terms used in] a measure").

In some circumstances when a term in a measure is ambiguous, the appropriate solution for purposes of drafting the ballot title may be to use the term that is used in the measure. Depending upon the particular term at issue, it also may be appropriate to identify that term as such by putting it in quotation marks. *See, e.g., Morgan v. Myers*, 342 Or 165, 169, 149 P3d 1160 (2006) (adding quotation marks around words "conduct" and "personal behavior" in ballot title involving free speech rights, when terms were undefined in measure itself). Also, depending on the particular measure and the term (and the applicable word limits), it may be appropriate to indicate whether or not the term is defined in the measure. *See, e.g., Martin / Bendl v. Myers*, 340 Or 569, 572, 135 P3d 315 (2006) (certifying ballot title using phrase from measure identified by quotation marks and modified by word "undefined" in parentheses); *Hunnicutt v. Myers*, 340 Or 83, 86, 127 P3d 1182 (2006) (approving ballot title summary that used words from measure not identified by quotation marks and modified by word "defined" in parentheses); *see also Hunnicutt v. Myers*, 342 Or 491, 495-96, 155 P3d 870 (2007)

(rejecting argument that term from measure used in ballot title should be identified as "undefined," because meaning of word, "in context, is sufficiently clear that no signal * * * is necessary to achieve substantial compliance with statutory standards"). However, merely using terms taken from the measure itself does not necessarily meet the statutory requirements for a ballot title, and the Attorney General is required to draft a ballot title that accurately describes the subject matter of the proposed measure, the result if the measure were to pass, and the major effect of the measure. *See Bartsch*, 322 Or at 342, 343-45 (Durham, J., concurring) ("If an ambiguity in a measure leaves its intention unclear, the Attorney General and this court do not satisfy [their statutory obligations] by repeating the measure's obscure terms in the ballot title, and thereby merely perpetuating those doubts.").

. With that background, we return to the proposed measure that is the subject of the ballot title at issue here. As discussed above, the Attorney General advances several reasonable arguments in support of his conclusion that the turnout requirement in the proposed measure does not apply to general elections. However, petitioners' contrary arguments are not without merit. As petitioners point out, the structure of the proposed measure does not parallel the current constitutional requirement respecting the elections at which a local property tax measure may be approved, which plainly imposes a turnout requirement on elections other than general elections, but not on general elections. Moreover, petitioners' argument that the turnout requirement in the proposed measure applies to general elections is a grammatically permissible reading of the text of the measure, and it draws some further support from the "whereas" clauses with which the measure begins.

Our review of the turnout requirement in the proposed measure convinces us that it can plausibly be interpreted both as applying to general elections and as not applying to general elections. The Attorney General, however, chose to interpret that ambiguous requirement as applying only to elections other than general elections and, therefore, stated in the certified caption that the turnout requirement applies "in some elections." In our view, it was inappropriate

for the Attorney General, at this stage, to resolve the ambiguity in the turnout requirement contained in the measure. *See Bartsch*, 322 Or at 339 (reaching similar conclusion under analogous circumstances). The caption thus does not accurately convey the uncertain scope of the measure and must be modified.

That leaves the issue of what changes the Attorney General should make to the caption to remedy the deficiency that we have identified. Petitioners suggest that the uncertain scope of the turnout requirement can be accommodated in the caption by stating that a property tax measure "cannot become law without sixty percent voter turnout, possible exceptions." That suggestion, however, has its own shortcomings, as the phrase "possible exceptions" indicates that there may be exceptions to the turnout requirement for elections *other* than general elections when, under the proposed measure, there plainly are no such exceptions.

■    As noted previously, it sometimes is possible to use the words of the measure itself in the caption to describe the subject of an ambiguous measure while avoiding speculation about how the measure might be interpreted in some future legal proceeding. That course does not always result in an accurate description of the "subject" of the measure. In any event, the Attorney General has an obligation under ORS 250.035(2)(a) to inform voters, as part of describing the subject of the measure, about the elections to which the turnout requirement applies. The Attorney General may use some version of the words in the measure or he may use some other words to convey the idea that the measure is unclear on that point, as long as the resulting caption satisfies ORS 250.035(2)(a).

■    Petitioners also challenge the "yes" vote result statement and the summary because both of those parts of the ballot title, like the caption, state that the turnout requirement does not apply to general elections. For the reasons set out above, we agree with petitioners. Those parts of the ballot title must be modified. Again, the Attorney General may use some version of the words of the measure to describe the "result" of the measure in the "yes" vote result statement and the "effect" of the measure in the summary, respectively, as

long as the resulting ballot title satisfies statutory requirements. Alternatively, the Attorney General may state that the "result" and the "effect" of the measure, with respect to the application of the turnout requirement to general elections, is unclear, if that statement satisfies statutory requirements.[2]

For the foregoing reasons, we conclude that the Attorney General's caption, "yes" vote result statement, and summary do not substantially comply with ORS 250.035(2)(a), (b), and (d) and must be modified.

Ballot title referred to Attorney General for modification.

---

[2] Petitioners raise one other objection to the "yes" vote result statement certified by the Attorney General; we reject that argument without discussion.