672 March 3, 2016 No. 9

IN THE SUPREME COURT OF THE
STATE OF OREGON

Ben UNGER,
LaToya Fick, and
Carmen Rubio,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(S063766)

En Banc

On petition to review ballot title filed December 28, 2015, considered and under advisement on February 9, 2016.

Margaret S. Olney, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the petition for petitioner Unger. Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, filed the petition for petitioners Fick and Rubio.

Shannon T. Reel, Assistant Attorney General, Salem, filed the answering memorandum. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Elden M. Rosenthal, Rosenthal, Greene & Devlin, P.C., Portland, filed the memorandum for *amici curiae* Ted Kulongoski and Tim Nesbitt.

Margaret S. Olney, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the memorandum for *amicus curiae* Peter Buckley.

LANDAU, J.

The ballot title is referred to the Attorney General for modification.

**LANDAU, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 65 (2016) (IP 65), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). This court reviews a certified ballot title to determine whether it substantially complies with the requirements of that statute. *See* ORS 250.085(5). For the following reasons, we refer the ballot title to the Attorney General for modification.

IP 65, if enacted, would establish a "High School Graduation and College and Career Readiness Fund" (Readiness Fund) within the state General Fund for the purposes of—as the title of the fund suggests—improving high school graduation rates and college and career readiness. The measure would require the legislature, beginning in 2017, to "appropriate, allocate or otherwise make available" to the fund not less than $800 per student per year. Thereafter, the measure would require that the amounts appropriated, allocated, or otherwise made available be increased in accordance with Executive Order No. 14-14, which requires the Oregon Department of Education biennially to estimate the costs to maintain current levels of performance for the State School Fund. The measure would require the fund itself to be apportioned among school districts based on the "extended weighted average daily membership" of high school districts, as provided under ORS 327.013(1)(c), which generally adjusts the calculation of student population in a given district to reflect higher costs associated with educating certain student populations. The measure would provide that the funds allocated from the Readiness Fund would be in addition to any other funds that the legislature would appropriate, allocate, or make available as part of the ordinary public education budgeting process.

Under the terms of IP 65, school districts would be required to apply to receive appropriations from the new fund, in accordance with eligibility requirements to be adopted by the State Board of Education. Those districts meeting the eligibility requirements would then be responsible for using some of the appropriations "to establish and

expand career-technical education programs in high schools that are relevant to the job market in the community or region the school district serves." The measure would further require such school districts to use some portion of the funds "to establish and expand college-level educational opportunities for students in high schools," as well as "dropout-prevention strategies" in high schools. And it would place a cap on the percentage of appropriations from the new fund that may be applied to school district "administrative costs."

IP 65 also would require the Oregon Department of Education to monitor the performance of districts receiving money from the Graduation and Readiness Fund, to "intervene where necessary" to ensure appropriate use of the fund, and to "[f]acilitate continuous improvement of use" of the fund. To pay for that work, the measure would authorize the department to retain a small portion of the fund.

The Attorney General certified the following ballot title for IP 65:

"**Requires state funding for dropout-prevention, career/college readiness programs; reduces funds for other services**

"**Result of 'Yes' Vote:**  'Yes' vote requires state to fund dropout-prevention, career/college readiness programs through grants; state monitors programs. Required funds unavailable for other programs/services.

"**Result of 'No' Vote:**  'No' vote retains current law: legislature not required to commit funds to career-technical/college-level education/dropout-prevention programs; retains discretion to allocate funds.

"**Summary:** Currently, legislature provides General Fund revenues to State School Fund based on constitutionally required quality goals; funds distributed directly to school districts under specified formula. Measure requires legislature to separately provide at least $800 per high school student—adjusted upward annually for inflation/population—to Department of Education (ODE) administered account; reduces General Fund revenues otherwise available for education, public services. ODE distributes those funds to school districts to establish/expand high school programs providing career-technical education,

college-level courses, and dropout-prevention strategies. School districts must apply for grants, meet specified requirements. Districts may use limited portion of fund for administration costs but not unrelated activities. ODE monitors school district performance, ensures compliance, facilitates programs; Secretary of State audits biannually. Other provisions."

Petitioner Unger contends that the certified ballot title is deficient in several respects pertaining to the "no" vote result statement and the summary. We reject those contentions without discussion.

Petitioners Fick and Rubio also challenge the ballot title, arguing that the caption does not reasonably identify the subject of IP 65, that the 'yes' and 'no' vote result statements do not accurately identify the consequences of voting one way or the other, and that the summary is deficient in that it carries forward problems with the caption and the result statements.

We begin with their arguments about the caption. ORS 250.035(2)(a) provides that a ballot title caption must "reasonably identif[y] the subject matter of the state measure." In this case, petitioners argue that the caption fails to meet that standard because it states that IP 65 "reduces funds for other services." According to petitioners, nothing in the wording of IP 65 would reduce funds for other services. At best, they argue, the statement amounts to speculation about the possible budgetary effects of enacting the proposed measure.

Citing *Novick v. Myers*, 333 Or 12, 16-17, 35 P3d 1017 (2001), the Attorney General defends the inclusion of the phrase, arguing that, IP 65 does, in fact, reduce funds for other services,

"because it *mandates* that the legislature appropriate to the Readiness Fund a certain amount per year from the General Fund. Because those moneys *must* be appropriated to the Readiness Fund, those moneys are therefore unavailable for other services."

(Emphasis in original.)

The Attorney General's reliance on *Novick* is misplaced. In that case, the proposed ballot measure would

have allocated 10 percent of income tax revenues for highway construction and maintenance. 333 Or at 15. This court held that the certified ballot title was deficient in that it failed to explain that, by requiring a specified percentage of income tax revenues to be devoted to one purpose, the measure *necessarily* resulted in a reduction in revenues for other purposes. *Id*. at 17.

In contrast, in this case, IP 65 does not require that a percentage of General Fund revenues be devoted to the Readiness Fund. Rather, it requires that a specific amount of money—$800 per student per year—be set aside for that fund. Nothing in the wording of the measure itself reduces funds for other services. And nothing in it would *necessarily* have the effect of requiring a reduction in funds for other services. It might or might not, depending how much money was in the General Fund to begin with. If there were sufficient money in the General Fund to cover the cost of the Readiness Fund, for example, reductions in funding for other services would not be required. Consequently, any statement that IP 65 "reduces funds for other services" is, at best, speculation. As this court has consistently stated, it will not "speculate—or * * * permit the Attorney General to speculate—about the possible effects of a proposed measure." *Wolf v. Myers*, 343 Or 494, 500, 173 P3d 812 (2007); *see also Pelikan/Tauman v. Myers*, 342 Or 383, 389, 153 P3d 117 (2007) ("[T]his court has explained that it will not speculate about the possible effects of a proposed measure."); *Kain v. Myers (S49089)*, 333 Or 446, 451, 41 P3d 416 (2002) (ballot title need not mention "conditional and conjectural" effects of proposed measure). The ballot title must be referred to the Attorney General for modification of the caption.

Petitioners argue that the caption also is deficient because it fails to make clear that IP 65 provides funds solely for high-school activities, when current state policy places career-technical education in "school districts, community colleges, federal and state workforce training programs, private career and technical education schools, apprenticeship programs and institutes of higher education." ORS 344.055(1). The Attorney General responds that, although the caption does not state explicitly that the measure's focus is high-school programs, when the ballot title is read as a

whole, the focus of the measure on high school programs becomes clear. We note that the deletion of the clause concerning the reduction of funds should provide enough words for the Attorney General to address that issue on referral, if she so chooses.

Petitioners challenge the "yes" vote result statement on the ground that it carries forward the problem with the caption in repeating that enactment of IP 65 would reduce funds for other services. The wording of the "yes" vote result statement, however, is not precisely the same as that of the caption in that regard. While the caption states that IP 65, if enacted, "reduces funds for other services," the "yes" vote result statement asserts that "[r]equired funds [are] *unavailable* for other programs/services." (Emphasis added.) Strictly speaking, the assertion in the result statement is accurate: Funds required for the Graduation and Readiness Fund are not "available" for other programs or services. Still, the statement could be misleading in that it could be taken to suggest what the caption erroneously states, namely, that IP 65 necessarily would reduce funds for other services. Petitioners likewise complain that the summary carries forward the same defect. The Attorney General can address those issues, too, on referral, if she so chooses.

Petitioners advance other arguments, which we reject without discussion.

The ballot title is referred to the Attorney General for modification.