Argued and submitted November 7, ballot title certified as modified
December 26, 1997

### Bill SIZEMORE,
*Petitioner,*

*v.*

### Hardy MYERS,
*Respondent.*

(SC S44538)

### Michael C. HOUCK,
*Petitioner,*

*v.*

### Hardy MYERS,
Attorney General, State of Oregon,
*Respondent,*

*and*

### Bill SIZEMORE,
*Intervenor.*

(SC S44539)
(Cases Consolidated for Argument and Opinion)

953 P2d 360

Gregory W. Byrne, Portland, argued the cause and filed the petition on behalf of petitioner/intervenor Bill Sizemore.

Steven C. Berman, of Ball Janik, LLP, Portland, argued the cause and filed the petition on behalf of petitioner Michael C. Houck.

Jas. Adams, Assistant Attorney General, Salem, argued the cause on behalf of respondent. With him on the answering memoranda were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

KULONGOSKI, J.

## KULONGOSKI, J.

In these original proceedings, two separate ballot title cases have been consolidated for review of petitioners' challenges to the Attorney General's certified ballot title for a proposed initiative measure. Petitioners are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title. ORS 250.067(1). Therefore, petitioners are entitled to seek modification of the proposed ballot title in this court. ORS 250.085(2). We review the Attorney General's ballot title for substantial compliance with the requirements of ORS 250.035. *See* ORS 250.085(5) (establishing this court's standard of review of ballot titles). We modify the Attorney General's ballot title and certify it to the Secretary of State as modified.

Pursuant to ORS 250.067(2), the Attorney General certified the following ballot title to the Secretary of State:

"AMENDS CONSTITUTION: PROHIBITS, DISSOLVES REGIONAL GOVERNMENTS, INCLUDING PORTLAND AREA 'METRO,' WITH EXCEPTIONS

"RESULT OF 'YES' VOTE: 'Yes' vote prohibits, dissolves regional governments, including Portland area metropolitan service district 'Metro,' with exceptions.

"RESULT OF 'NO' VOTE: 'No' vote retains all forms of regional governments, including Portland area metropolitan service district ('Metro').

"SUMMARY: Amends constitution. Constitution currently authorizes metropolitan service districts, allows regional governments. Measure prohibits, dissolves regional government, defined as any governmental entity crossing city, county boundaries. Specifically dissolves Portland area metropolitan service district called 'Metro.' Effectively dissolves Metro's regional urban growth boundary. Exempts governmental entities providing single, defined service; lists specific entities not covered. Creates process for transferring parks, zoos to cities, counties, districts; other facilities to new regional commission. Allocates remaining funds, debts to affected counties. Provides no system for paying dissolved regional governments' debts."

Petitioner Sizemore challenges the caption and the summary of the Attorney General's ballot title. Petitioner Houck challenges the caption, the result statements, and the summary.

CAPTION

■    ORS 250.035(2)(a) requires a "caption of not more than 10 words that reasonably identifies the subject matter of the state measure." Petitioner Sizemore argues that the caption "does not reasonably identify the subject matter of the measure," because the "wording of the certified caption is awkward and confusing" and, therefore, lacks clarity. Petitioner Sizemore contends that the Portland area Metropolitan Service District (Metro) is, "by definition," the only regional government dissolved by the proposed initiative measure and that the ballot title caption should be rewritten to make it clear that only Metro is dissolved.

That argument is not well taken. The proposed initiative measure does not provide explicitly that only Metro will be dissolved. On its face, the proposed initiative measure dissolves all regional governments. Section 1 provides, in part, that "[a]ll regional governments existing on the effective date of this act shall be dissolved." Factual and legal inquiry beyond the scope of this proceeding would be required to determine whether other regional entities exist that fall within the proposed initiative measure's definition of regional government, but that are not specifically listed in the initiative measure's exceptions. For example, the regional governmental councils authorized by ORS chapter 190 are multi-jurisdictional, multi-purpose organizations that may meet the proposed initiative measure's definition of "regional government."[1] Those councils are not included in

---

[1] The *1997-98 Oregon Blue Book*, 332, provides the following list of ORS chapter 190 councils:

Central Oregon Intergovernmental Council
Clatsop-Tillamook Intergovernmental Council
Greater Eastern Oregon Development Corporation
Idaho-Oregon Planning & Development Assn., Inc.
Lane Council of Governments
Mid-Columbia Council of Governments
Mid-Willamette Valley Council of Governments

the specific exceptions listed in section 4 of the proposed initiative measure. To the extent that any one of those regional councils provides a political forum for resolution of regional issues, the member units of local government may be giving up their authority and autonomy regarding certain issues. We do not decide those issues here, but conclude only that the Attorney General properly declined to characterize the proposed initiative measure as dissolving *only* Metro.

■        Petitioner Sizemore next argues that voters will be confused by (1) the "juxtaposition of 'prohibits' with 'dissolves,'" and (2) "the phrase 'with exceptions' following 'dissolves * * * Metro.'" Because petitioner Sizemore failed to raise either of those arguments in his original written comments on the Attorney General's draft ballot title, this court may not consider them. ORS 250.085(6); *McCoid v. Kulongoski*, 321 Or 452, 454, 900 P2d 1028 (1995).

■        Petitioner Houck contends that the proposed initiative measure contains three subjects, or three "distinct aspects" of one subject: (1) eliminating regional governments, including Metro; (2) eliminating Metro's urban growth boundary (UGB); and (3) requiring the sale of Metro's assets. Petitioner Houck argues that the caption does not comply with ORS 250.035(2)(a), because it does not reasonably identify the whole subject matter of the proposed initiative measure. He argues that it identifies only one of those subjects or "distinct aspects," *i.e.*, the elimination of regional governments, and that it does not expressly mention the last two of those three subjects, or aspects, of the proposed initiative measure.

This court has explained that the function of a ballot title caption is to identify generally the thread that connects a ballot measure's various provisions, rather than "focusing on one or more of the most significant constituent parts." *Rooney v. Kulongoski*, 322 Or 77, 85, 902 P2d 1177 (1995). A caption that does not list multiple parts of an initiative measure nonetheless may substantially comply with the statutory

Northeast Oregon Economic Development District
Oregon Cascades West Council of Governments
Rogue Valley Council of Governments
Umpqua Regional Council of Governments

standard, in the absence of a showing that unnecessary words have been inserted into the caption and that additional ideas could be communicated to the voters by replacing those unnecessary words. *Crumpton v. Kiesling*, 317 Or 322, 325-26, 855 P2d 1107 (1993).

In this case, within the ten-word statutory limit, the Attorney General's caption identifies the following important provisions of the proposed initiative measure: (1) prohibition on regional governments; (2) dissolution of existing regional governments, (3) specifically including Metro; with (4) enumerated exceptions. Petitioner Houck fails to identify any of those provisions as "unnecessary," yet asks this court to replace one or all of them to discuss additional parts of the proposed initiative measure that he wishes to see in the ballot title caption. Because that argument fails to persuade us that the Attorney General's caption is legally insufficient, we decline to modify the caption.

In light of the foregoing, we hold that the Attorney General's caption substantially complies with ORS 250.035-(2).

## RESULT STATEMENTS

ORS 250.035(2)(b) and (c) require a "simple and understandable statement of not more than 15 words that describes the result if the state measure is approved" and a "simple and understandable statement of not more than 15 words that describes the result if the state measure is rejected." The statements "shall be written so that, to the extent practical, the language of the two statements is parallel." ORS 250.035(3).

■ Petitioner Houck argues that the Attorney General's result statements fail to substantially comply with the statutory requirements for the same reason that he argues that the caption is defective: the result statements fail to disclose two important "impacts" of the proposed initiative measure—the elimination of the Metro UGB and the sale or transfer of all Metro assets. We disagree. Even assuming that petitioner Houck's suggested additions would be desirable (an issue that we do not decide), he has failed to show how, given the limitations inherent in the statutory word limit, the Attorney

General's "yes vote" result statement is legally insufficient. We hold that the Attorney General's "yes vote" result statement substantially complies with ORS 250.035(2)(b).

Petitioner Houck also challenges the Attorney General's "no vote" result statement. However, his argument is premised on the theory that his challenge to the "yes vote" result statement is well taken. As we have held, it is not. We hold that the Attorney General's "no vote" result statement substantially complies with ORS 250.035(2)(c).[2]

## SUMMARY

ORS 250.035(2)(d) requires that a ballot title contain a "concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

Petitioner Sizemore objects to two statements in the Attorney General's summary: (1) the statement that the initiative measure "[e]ffectively dissolves Metro's regional urban growth boundary," and (2) the statement that the initiative measure "[p]rovides no system for paying dissolved regional governments' debts." Petitioner Sizemore argues that the first statement, regarding Metro's UGB, "stems merely from the Attorney General's *opinion* [emphasis in original] that an effect of adopting the measure would be to dissolve the Portland area UGB," that this effect arguably might not occur, and that, even if it were certain to occur, it is only a "tertiary" effect of the initiative measure that may not be mentioned in the ballot title summary.

The Portland area UGB is established by Metro pursuant to ORS 268.390(3).[3] Pursuant to ORS 268.390(4),

---

[2] Petitioner Sizemore does not challenge the result statements in his petition. However, he provides suggested alternative wording for both result statements, unsupported by any argument. Because we hold that the Attorney General's result statements substantially comply with ORS 250.035(2)(b) and (c), we do not consider petitioner Sizemore's alternative wording.

[3] ORS 268.390 provides:

"A [metropolitan service] district council shall:

"(1) Define and apply a planning procedure which identifies and designates areas and activities having significant impact upon the orderly and responsible development of the metropolitan area, including, but not limited to, impact on:

"(a) Air quality;

Metro may require cities and counties to amend their comprehensive land use plans to conform to the Portland area UGB established by Metro. Metro also may require cities and counties within the Metro district to amend their comprehensive plans as those plans affect land use, water quality, air quality, transportation, or other issues, as determined by the Metro Council pursuant to ORS 268.390(1).

■ The parties agree that, if the proposed initiative measure is passed by the voters, Metro will cease to exist. However, the Attorney General's summary, which states that the proposed initiative measure "[e]ffectively dissolves Metro's regional urban growth boundary," is incorrect. If the initiative measure is passed by the voters, the UGB would not cease to exist at that time. What would cease to exist, along with Metro itself, is Metro's authority to require cities and counties in the Metro district to amend their comprehensive plans to conform to the Metro UGB and other requirements on land use, water quality, air quality, and transportation.

For example, ORS 197.625(1) provides, in part:

> "If no notice of intent to appeal is filed within the 21-day period set out in ORS 197.830(8), the amendment to the acknowledged comprehensive plan or land use regulation or the new land use regulation shall be considered acknowledged upon the expiration of the 21-day period."

---

"(b) Water quality; and

"(c) Transportation.

"(2) Prepare and adopt functional plans for those areas designated under subsection (1) of this section to control metropolitan area impact on air and water quality, transportation and other aspects of metropolitan area development the council may identify.

"(3) Adopt an urban growth boundary for the district in compliance with applicable goals adopted under ORS chapters 195, 196 and 197.

"(4) Review the comprehensive plans in effect on January 1, 1979, or subsequently adopted by the cities and counties within the district which affect areas designated by the council under subsection (1) of this section or the urban growth boundary adopted under subsection (3) of this section and recommend or require cities and counties, as it considers necessary, to make changes in any plan to assure that the plan and any actions taken under it conform to the district's functional plans adopted under subsection (2) of this section and its urban growth boundary adopted under subsection (3) of this section."

This creates the possibility of a scenario in which, the day after the proposed measure is enacted, one or more cities immediately adopt new UGBs, one or more of which could be deemed acknowledged 21 days after adoption, barring the filing of notices of appeal with the Land Use Board of Appeals (LUBA) for each new UGB. Even if the hypothetical new UGBs were appealed to LUBA, there currently is no existing mechanism or process, separate from Metro itself, for coordinating the UGBs of all 24 cities within the Portland area UGB, and current administrative rules do not expressly address consideration of regional needs with respect to review of the UGBs of individual cities. The end result, if the measure is passed, is the elimination of Metro's authority to coordinate the regional UGB and related land use air quality, water quality, and transportation issues.

In our view, the elimination of Metro's enforcement authority is a predictable legal effect of the proposed measure, if enacted, and should be mentioned in the ballot title summary. *See Bartsch v. Kulongoski*, 322 Or 335, 338-39, 906 P2d 815 (1995) (court sustained Attorney General's use of phrase "any person" in a ballot title, because those words accurately described initiative measure's effect; initiative measure's use of different terms did not render Attorney General's choice inaccurate, because initiative measure's terms had "no established meaning in the law"); *Huss v. Kulongoski*, 324 Or 369, 371, 926 P2d 318 (1996) (in proposed initiative measure amending Oregon Constitution to give human embryos and fetuses "full legal rights," court certified Attorney General's ballot title summary that stated the predictable legal effects of the initiative measure). Accordingly, we so modify the Attorney General's summary.

■  Petitioner Sizemore next argues that the statement in the summary that the proposed initiative measure "[p]rovides no system for paying dissolved regional governments' debts" is inaccurate. We agree. The proposed initiative measure contemplates two species of regional government debt: (1) bonded indebtedness, which is discussed in the proposed initiative measure in subsections (2)(c)(i) and (ii); and (2) other debt remaining after the dissolution of the regional government, which is discussed in subsection (2)(c)(iii). Governmental entities receiving the assets of the

dissolved regional government (*e.g.*, parks, zoos, convention facilities, etc.) specifically would be granted the authority of the dissolved regional government with respect to bonds and property taxes used to finance the purchase or construction of the transferred assets. After dissolution, debt unrelated to bonds issued by the regional government, if any, would be apportioned equally among the counties in which the dissolved regional government was located. Thus, the "system" for the payment of the dissolved regional governments' debts is clear: bonded indebtedness would be paid using tax revenues contemplated by the regional government at the time the bonds were issued, and any other debt would be split equally among the relevant counties and paid in whatever manner selected by each of those counties. Accordingly, we modify the Attorney General's summary by eliminating the challenged sentence.

■ Petitioner Houck argues that the summary's discussion of the debt issue is statutorily deficient. He contends that Metro's assets currently are insufficient to cover Metro's indebtedness and that, if the proposed initiative measure passes, the counties in which Metro is located will acquire new debt. He argues that the summary would mislead voters by implying that the cities and counties in Metro could acquire new debt *or* new funds, and that this implication is "erroneous and wholly improper." Even the most casual evaluation of petitioner Houck's argument in this regard would require a factual investigation by this court into Metro's current financial health. That would be well beyond the scope of this proceeding. Petitioner Houck's argument is not well taken.

■ Petitioner Houck argues that the Attorney General's summary is deficient in two additional respects: (1) it does not discuss adequately the extent to which Metro would be required to transfer its properties, should the initiative measure pass; and (2) it does not address the effect of the initiative measure on Oregon's constitutional home rule provisions. We reject Petitioner Houck's first argument. The Attorney General's summary, taken as a whole, makes clear that Metro would be dissolved, its affairs wound up, and its assets transferred if the proposed initiative measure is passed by the voters.

■ Regarding the effect of the proposed initiative measure on Oregon's constitutional home rule provisions, Petitioner Houck argues that Article IV, section 1(5), Article VI, section 10, and Article XI, section 2, of the Oregon Constitution reserve to local governments the right to choose and control the form and structure of their local governments, and that this power includes the authority to share resources, or to create "districts" to share resources, so as to accomplish multiple tasks, as long as that action does not interfere with "a general law addressed primarily to substantive social, economic, or other regulatory objectives." *Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 463, 814 P2d 1060 (1991). Petitioner Houck argues further that the proposed initiative measure removes the power to cooperate from the hands of local governments, which constitutes a "serious modification of the 'home rule' provisions of the Oregon Constitution." Discussion of that issue is misplaced here, because it would require extensive legal interpretation, not only of the proposed initiative measure, but also of the interaction of the initiative measure with other constitutional provisions. Because this is beyond our authority in this proceeding, we decline to consider Petitioner Houck's argument.

In accordance with the foregoing discussion, we certify the following modified ballot title to the Secretary of State:

AMENDS CONSTITUTION: PROHIBITS, DISSOLVES REGIONAL GOVERNMENTS, INCLUDING PORTLAND AREA "METRO," WITH EXCEPTIONS

RESULT OF "YES" VOTE: "Yes" vote prohibits, dissolves regional governments, including Portland area metropolitan service district "Metro," with exceptions.

RESULT OF "NO" VOTE: "No" vote retains all forms of regional governments, including Portland area metropolitan service district ("Metro").

SUMMARY: Amends constitution. Constitution currently authorizes metropolitan service districts, allows regional governments. Measure prohibits, dissolves regional governmental entities crossing city, county boundaries. Specifically dissolves Portland area metropolitan service district, "Metro." Eliminates Metro's authority to

enforce regional urban growth boundary, and authority to coordinate land use, air quality, water quality, transportation planning. Exempts governmental entities providing single, defined service; lists specific exceptions. Creates process for transferring parks, zoos to cities, counties, districts; other facilities to new regional commission. Allocates remaining funds, debts to affected counties.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).