Submitted on the record September 30, ballot title referred to Attorney General for modification November 18, reconsideration denied November 30, 2005

Thomas M. CHRIST,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S52664 (Control))

Charles S. TAUMAN,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(S52667)
(Cases Consolidated)

123 P3d 271

Thomas M. Christ, Portland, filed the petition for himself.

Steven C. Berman, of Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, filed the petition for petitioner Tauman.

Ryan Kahn, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

**GILLETTE, J.**

This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for a proposed initiative measure, denominated by the Secretary of State as Initiative Petition 41 (2006). Petitioners are electors who timely submitted written comments to the Secretary of State concerning the content of the Attorney General's draft ballot title and who therefore are entitled to seek review of the resulting certified ballot title in this court. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2)(a) to (d). ORS 250.085(5). For the reasons that follow, we conclude that it does not. Accordingly, we refer the ballot title to the Attorney General for modification.

The proposed measure is set out in its entirety in the Appendix. For purposes of introduction, the following summary suffices. The proposed measure begins as follows:

"Be it Enacted by the People of the State of Oregon:

"1[.] This Act shall be known as The Peoples' Court Act[.]

"2[.] The seven judges of the Supreme Court of Oregon shall be elected from districts within the state. Six judges shall be elected from each of six geographic districts,[1] and one judge shall be elected in a statewide district. The judge elected statewide shall be the Chief Justice of the Supreme Court."

The proposed measure goes on in eight additional numbered paragraphs to provide, *inter alia,* how the six geographic districts will be formed (*viz.,* by combining certain Oregon Senate districts), how the judges will be elected from those

---

[1] We recognize the unfortunate imprecision inherent in the phrase, "[s]ix judges shall be elected from each of six geographic districts": Read literally, the wording calls for the election of a total of *36* Supreme Court judges (six "from each" of six specified geographic districts). However, the overall context in which the phrase appears makes it clear that the sponsors of the proposed measure do not intend to expand the size of the court from seven to 37. What is intended is that *one* judge shall be elected "from each" of the six specified geographic districts.

districts, and how incumbent members of the court fit into the proposed system. The proposed measure also provides that the Chief Justice will be elected in the state at large and will have administrative authority over the state Judicial Department.

We do not think it useful to set out the Attorney General's certified ballot title in its entirety. Instead, we limit our recitation of the ballot title to those parts that are at issue. The Attorney General's caption for the Initiative Petition 41 states:

"AMENDS CONSTITUTION: REQUIRES ELECTION
OF SIX OREGON SUPREME COURT JUDGES
BY GEOGRAPHIC DISTRICTS;
CHIEF JUSTICE ELECTED STATEWIDE"

The Attorney General's summary for the proposed measure also begins with the phrase "Amends Constitution."

Both petitioners challenge the caption and the summary in the Attorney General's certified ballot title on the same ground. They assert that the Attorney General's caption and summary should not begin with the words, "Amends Constitution," because the proposed measure is, in fact, a proposed statute and not a proposed constitutional amendment.

■ Ordinarily, a caption for the ballot title for a proposed initiative measure consists of "not more than 15 words that reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). However, when the proposed initiative measure would amend the constitution,

"[t]he caption of an initiative or referendum amendment to the constitution *shall* begin with the phrase, 'Amends Constitution,' which shall not be counted for purposes of the 15-word limitation."[2]

---

[2] There is no similar statutory requirement respecting the content of the Attorney General's summary, which is described in ORS 250.035(2)(d) simply as a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Neither is there a similar statutory exemption from the word limit for the use of the phrase "Amends Constitution." However, it is difficult to imagine a summary of a state measure proposing to amend the constitution that would be adequate without including that information in some form.

*Id.* (emphasis added). Thus, as a part of his statutory obligation to prepare ballot titles, the Attorney General is required to determine in each case involving a proposed initiative measure whether that measure would amend the state constitution and, if it would, to include the phrase "Amends Constitution" in the caption. The question in this case is whether the Attorney General properly chose to label the proposed initiative measure as such a constitutional amendment.

■ We have little difficulty in concluding that the Attorney General erred. We begin with the text of Initiative Petition 41 itself. We note that nothing in that proposed measure states, suggests, or even fairly may be said to imply that the measure is intended to be a constitutional amendment, either by changing existing wording in the Oregon Constitution or by adding new wording or provisions to it.

In contrast to what the proposed initiative measure does not say, what it does say is telling. As noted, the proposed measure twice characterizes itself in its first paragraph as an "Act": "This *Act* shall be known as The Peoples' Court *Act*[.]" (Emphasis added.) Similarly, the fourth paragraph of the proposed initiative measure states that "[t]his *Act* shall not have the effect of shortening the term of any incumbent judge," the ninth paragraph offers the assurance that "[t]his *Act* is intended to bring the Supreme Court of Oregon closer to the people," and the tenth paragraph provides that "[t]his *Act* takes effect upon Passage [and] * * * [c]ertain parts of the *Act* are operative on delayed dates as specified in the *Act*." (Emphasis added.)

The proposed measure's repeated self-characterization is important, because the term "act" has a special and well-recognized meaning in the area of lawmaking: An "act" ordinarily is a legislatively passed statute. *Webster's Third New Int'l Dictionary* 20 (unabridged ed 2002) defines an "act" as

> "the formal product of a legislative body: the formally declared will of a legislature the final requirement of which is usu[ally] the signature of the proper executive officer: STATUTE ‹an ~ of Congress› * * *."

Thus, taking the proposed initiative measure at its word, the most reasonable reading of it is that it is intended to be a statute, not a constitutional amendment.

In addition to the foregoing, context within chapter 250 of the Oregon Revised Statutes confirms that the legislature recognizes that the meaning of "act" on which we rely is apt in cases involving proposed initiative measures. ORS 250.005(3), one of the provisions in chapter 250 setting out definitions, provides that, for purposes of an initiative, the term "measure" includes:

"(a)  A proposed law.

"(b)  An Act or part of an Act of the legislative assembly.

"(c)  A revision of or amendment to the Oregon Constitution."

That is, "Acts" are different than constitutional amendments.

In response, the Attorney General relies on the Secretary of State's form (a form denominated "SEL 310") that the sponsors of Initiative Petition 41 filed with the Secretary of State respecting the proposed measure. That form offered the sponsors two boxes, one labeled "statutory" and the other labeled "constitutional." The sponsors checked the box labeled "constitutional." Such a choice, the Attorney General asserts, designates the measure as a "constitutional amendment," and "the Attorney General must adhere to that designation."

We cannot accept that explanation, which would make the Attorney General the prisoner of a choice—perhaps informed, perhaps not, perhaps even intentionally duplicitous—by a measure's sponsor to check one or another box on a form. As our earlier recitation of the pertinent statutory tasks assigned to the Attorney General shows, that officer is charged by legislation with drafting a ballot title that properly labels a proposed initiative measure. No piece of paper, indeed no rule, created by the Secretary of State can relieve or excuse the Attorney General from that statutory obligation.

■       The Attorney General, relying on various older opinions of this court,[3] argues that he is not permitted, in the ballot title process, to "interpret" the "practical effect" of a proposed initiative measure. That argument is not well taken. The statutory framework in which the Attorney General performs the ballot title preparation function may deny the Attorney General the right to speculate as to a proposed initiative measure's meaning, where two or more reasonable interpretations are possible. But the statutory standards in ORS 250.035(2)(a) (requiring Attorney General to prepare caption "that reasonably identifies the subject matter" of the proposed measure); (2)(b) (requiring a "simple and understandable statement * * * that describes the result if the state measure is approved"); (2)(c) (requiring a "simple and understandable statement * * * that describes the result if the state measure is rejected"); and (2)(d) (requiring a statement "summarizing the state measure and its major effect") all require a degree of interpretive effort by the Attorney General. *See, e.g., Kain/Waller v. Myers,* 337 Or 36, 93 P3d 62 (2004) (interpreting ORS 250.035(2)(a) and (b), and illustrating proposition). The Attorney General should not in the future rely on apparently contrary statements from our older decisions. Instead, the Attorney General must recognize that his or her statutory obligation includes a certain amount of basic interpretation including, in this case, an independent assessment of what the proposed initiative measure in this case *is*—statutory enactment or constitutional amendment. He or she must make that identification in order to inform potential signers of the initiative petition as to what the "practical effect" of the proposed measure will be if it is adopted.

        The noted textual and contextual points all lead inevitably in the same direction. The lack of any mention of the Oregon Constitution in Initiative Petition 41, the proposed measure's self-characterization as an "Act," the

---

[3] The Attorney General cites *Kouns v. Paulus,* 296 Or 826, 828, 680 P2d 385 (1984) (not Attorney General's role in ballot title process to interpret words of proposed measure); *Hand v. Roberts,* 309 Or 430, 438, 788 P2d 446 (1990) ("[t]his court * * * assiduously attempts to avoid deciding questions of the practical effect of initiative * * * measures in its review of a certified ballot title"); and *ACLU v. Paulus,* 282 Or 539, 544, 580 P2d 168 (1978) (inappropriate for Attorney General to speculate on meaning of wording of the proposed measure).

ordinary meaning of that term, and the specific legislative recognition in ORS chapter 250 of the meaning of "Act" as something different from a constitutional amendment establish that Initiative Petition 41 is a proposed statute, not a proposed constitutional amendment. The Attorney General's contrary arguments are unavailing.

We hold that the caption and the summary of the Attorney General's certified ballot title fail to meet the requirement of ORS 250.085(5) that they substantially comply with the requirements set out in ORS 250.035(2)(a) and (d). The ballot title must be referred to the Attorney General for modification. *See* ORS 250.085(8) (authorizing such disposition).

One other issue requires mention. Petitioner Tauman asserts that the Attorney General's "no" result statement also fails to meet the standard of ORS 250.085(5) because it incorrectly indicates that current Oregon law contains no residency requirement for members of the Oregon Supreme Court. *See* ORS 250.035(2)(c) (setting out standards for "no" result statement). The Attorney General concedes that his "no" result statement is deficient in that respect, and we agree. By statute, members of the Oregon Supreme Court must have resided in the state for at least three years before assuming office. ORS 2.020(1). The Attorney General's certified ballot title, therefore, is referred to the Attorney General for modification on that ground as well.

Ballot title referred to Attorney General for modification.

## APPENDIX
## PROPOSED MEASURE

Be It Enacted by the People of the State of Oregon:

1.  This Act shall be know[n] as the Peoples' Court Act

2.  The seven judges of the Supreme Court of Oregon shall be elected from districts within the state. Six judges shall be elected from each of six geographic districts, and one judge shall be elected in a statewide district. The judge elected statewide shall be the Chief Justice of the Supreme Court.

3.  The seven existing positions on the Supreme Court of Oregon shall be assigned to the following geographic districts, consisting of the following State Senate districts:

| Court Position | Senate Districts |
|---|---|
| 1 | 1,2,3,4,5 |
| 2 | 6,7,8,9,10 |
| 3 | 11,12,13,14,15 |
| 4 | 16,17,18,19,20 |
| 5 | 21,22,23,24,25 |
| 6 | 26,27,28,29,30 |
| 7 | entire state |

4.  Any judge who is in office or is a judge-elect as of January 1, 2007 shall remain assigned to the court position to which the judge was elected until the conclusion of the term for which the judge was elected. This Act shall not have the effect of shortening the term of any incumbent judge.

5.  Any candidate for election as judge of the Supreme Court of Oregon must reside in the geographic district assigned to the respective position at the time of filing for election to the position.

6.  Any judge of the Supreme Court of Oregon must reside in the geographic district assigned to the

judge's position throughout the judge's term of office. This residency requirement does not apply for the immediate term of any judge who is already in office, or is a judge-elect, as of January 1, 2007.

7 Current law relating to selection of the Chief Justice of the Supreme Court of Oregon shall remain in effect until such time as position number 7 on the Supreme Court is next filled by election. The next regular election to fill position number 7 shall be for the statewide district and the judge who takes office upon such election shall be Chief Justice upon taking office.

8 At any time that the Chief Justice position is vacant, the other members of the Supreme Court may elect, from among the judges of the Supreme Court, an Acting Chief Justice, who shall so serve until the Chief Justice is duly selected by interim appointment by the governor of by election.

9 This Act is intended to bring the Supreme Court of Oregon closer to the people by having each of six judges elected by geographic district, and by having the Chief Justice of the Supreme Court directly elected by all the people. The Chief Justice shall have equal authority to decide cases with each of the six other judges, but shall exercise the power, inherent in the office of Chief Justice, to manage the administrative affairs and organization of the Judicial Department. Powers held by the Chief Justice of the Supreme Court of Oregon as of November 1, 2006 shall remain with any Chief Justice elected under this Act. Such powers may not be diminished except by vote of the Legislative Assembly or by vote of the people.

10 This Act takes effect upon Passage. Certain parts of the Act are operative on delayed dates as specified in the Act.