On petition to review ballot title filed September 12; considered and under advisement on December 5, ballot title referred to the Attorney General for modification December 28, 2007, modified ballot title referred back to Attorney General for further modification February 13, 2008 (344 Or 195) Modified ballot title certified February 29, 2008 (344 Or 281)

## Laura Culberson FARR,
*Petitioner,*

*v.*

## Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

## (SC S55292)

174 P3d 1012

Margaret S. Olney, Smith, Diamond & Olney, Portland, filed the petition to review ballot title and reply to respondent's answering memorandum for petitioner.

Christina M. Hutchins, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

LINDER, J.

**LINDER, J.**

Petitioner seeks review of the Attorney General's certified ballot title for Initiative Petition 1 (2010).[1] *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot title). This court reviews the certified ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 1 is a statutory proposal that establishes certain minimum educational and training requirements as a condition of performing what the measure defines as "high velocity, low amplitude" spinal manipulation and adjustment. Under the proposed measure, health professional regulatory boards, as specified in ORS 676.160, may suspend, revoke, or refuse to renew the license or registration of a person under their jurisdiction who performs such spinal manipulations without the requisite education and training. Likewise under the proposed measure, the board that regulates athletic trainers (who are not covered under ORS 676.160) may suspend, revoke, or refuse to renew an athletic trainer's license or registration if he or she performs "high velocity, low amplitude" spinal manipulations without the requisite education and training.

The Attorney General certified the following ballot title for Initiative Petition 1:

"ESTABLISHES MINIMUM EDUCATIONAL, OTHER REQUIREMENTS TO PERFORM SPINAL MANIPULATION, ADJUSTMENTS; VIOLATIONS ARE UNLAWFUL CHIROPRACTIC PRACTICE

"RESULT OF 'YES' VOTE: 'Yes' vote establishes minimum educational, training requirements, legal authorizations, for spinal manipulation and adjustments by persons in Oregon; makes violations punishable as unlawful chiropractic practice.

---

[1] The proposed measure is set forth in the Appendix.

"RESULT OF 'NO' VOTE: 'No' vote makes no changes to training and educational requirements for spinal manipulation and adjustments by different professions; requirements remain set by respective licensing boards.

"SUMMARY: Current law contains statutes, rules and regulations governing the scope of practice of health care practitioners, including chiropractors and athletic trainers. Measure prohibits persons from performing 'high velocity, low amplitude spinal manipulation or chiropractic spinal adjusting' (defined) without having: legal authority to perform 'differential diagnosis' (defined) in Oregon; 400 hours of hands-on instruction in spinal manipulation and adjustments; 900 hours of clinical training directly supervised by licensed physician over at least twelve months. Measure makes performance of spinal manipulation and adjustments unlawful chiropractic practice and grounds for a health professional regulatory board having authority over a health care practitioner or the Board of Athletic Trainers to suspend, revoke or refuse to renew a license or registration or impose other lawful disciplinary action. Other provisions."

Petitioner challenges only the summary prepared by the Attorney General for the proposed measure. ORS 250.035(2)(d) requires that the summary contain "[a] concise and impartial statement of not more than 125 words summarizing the state measure and its major effect." Petitioner advances two independent challenges to the adequacy of the summary, which we consider in turn.

Petitioner's first challenge is that the description of current law in the summary is unhelpful, because merely stating that existing "statutes, rules and regulations" govern the scope of practice of health care practitioners provides no useful information to voters. In petitioner's view, that problem is compounded because the summary singles out chiropractors and athletic trainers and, by doing so, suggests that they are the only professionals affected by the proposal. The Attorney General does not directly respond to petitioner's concern that the summary's reference to current law is too generic. As for petitioner's claim that the summary singles out chiropractors and athletic trainers, the Attorney General urges that, because the summary refers to "health care providers, *including* chiropractors and athletic trainers"

(emphasis added by Attorney General), the summary adequately explains that health care providers more generally are affected by the proposed measure. The Attorney General defends the specific reference to chiropractors and athletic trainers because the proposed measure itself specifically includes those groups by extending its scope to the regulatory board that oversees athletic trainers and by declaring that a violation of the statutory prohibition is an unlawful "chiropractic practice."

We agree with petitioner that merely stating that current law "contains statutes, rules and regulations governing the scope of practice of health care practitioners" does not give voters needed information to assess the major effect of the proposed measure. Under current law, the boards that oversee health care professionals establish educational and training requirements as a prerequisite for obtaining a license or other credential to practice their respective professions. *See, e.g.*, ORS 685.060(2) (2005), *amended by* Or Laws 2007, ch 327, § 1 (studies required of applicant for naturopathic license include those listed by statute and other subjects as required by the Board of Naturopathic Examiners); ORS 688.160(6)(d) (giving Physical Therapist Licensing Board authority to establish standards and tests to determine qualifications of applicants). That point must be made so that voters can understand that the proposed measure, by mandating minimum education and training requirements for performing "high velocity, low amplitude spinal manipulation and chiropractic spinal adjust[ment],"[2] would change the current legal authority of the health care regulatory boards in that regard.

We also agree with petitioner that the summary, by listing only chiropractors and athletic trainers as examples of the licensed professionals affected by the proposed measure, does not adequately describe the proposed measure's scope in terms of who it affects. The proposed measure would prescribe educational and training requirements for all health care professionals regulated by boards listed in ORS 676.160.

---

[2] We note the proposed measure defines "spinal adjustment," whereas the summary refers to the procedure as "spinal adjusting."

The boards so listed regulate a wide range of health care professionals (*e.g.*, naturopaths, medical physicians, and physical therapists), some of whom may now perform or may in the future perform spinal manipulations of the kind that the proposed measure describes.[3] Because the proposed measure makes violation of its provisions an unlawful "chiropractic" practice, identifying chiropractors in the summary as among the health care professionals affected by the proposed measure does not aid in explaining what other health care professionals are subject to the proposed measure's terms. Nor does listing athletic trainers do so. Athletic trainers are not health care professionals regulated by any board listed in ORS 676.160. Rather, they are in a category of their own. *See generally* ORS 688.701 - 688.734 (provisions governing licensing and oversight of athletic trainers). Because the proposed measure nevertheless specifically extends to them, the Attorney General appropriately specially identified them as professionals who would be affected by the proposed measure. But, again, doing so does not assist in describing that a broader group of *health care* professionals regulated by boards listed in ORS 676.160, in addition to chiropractors, also could be affected. We therefore conclude that the Attorney General's summary does not substantially comply with ORS 250.035(2)(d) in that regard.

■ Petitioner's second challenge to the summary is that it does not accurately describe the major effect of the proposed measure because it does not explain that, at present, "only chiropractors receive [the] specified kind of training" that the measure requires. Petitioner urges that the real

---

[3] ORS 676.160 contains an extensive list of regulatory boards that oversee health care professionals. *See, e.g.*, ORS 676.160(3) (State Board of Clinical Social Workers); ORS 676.160(6) (Board of Examiners of Licensed Dietitians); ORS 676.160(9) (Board of Naturopathic Examiners); ORS 676.160(13) (State Board of Pharmacy); ORS 676.160(14) (Board of Medical Examiners); ORS 676.160(16) (Physical Therapist Licensing Board). As we explain in our answer to petitioner's second challenge to the summary, neither the proposed measure nor other governing law provides a way to determine which other licensed health care professionals will be affected by the proposed measure. The summary therefore does not have to list or specifically identify those other health care professionals. But it must, better than it does now, explain that the major effect of the measure is to establish minimum levels of training and education for other health care professionals, in addition to chiropractors, who now perform or are likely in the future to perform "high velocity, low amplitude" spinal manipulations.

effect of the measure will be to give chiropractors "a monopoly" over spinal manipulation therapy and make it unlawful for other health care professionals to provide the same therapy.

The proposed measure, however, does no more than establish minimum levels of training and education that health care professionals and athletic trainers must meet as a condition of performing the described spinal manipulation therapy. It does not require that a person be a licensed chiropractor to perform that therapy. Whether other health care professionals have obtained, or in the future will obtain, the minimum training and education that the proposed measure would require cannot be determined from the terms of the measure itself or from other governing law. We agree with the Attorney General that petitioner's second ground for challenging the summary requires speculation that is beyond the scope of the ballot title process. *Sizemore v. Myers*, 326 Or 220, 230, 953 P2d 360 (1997) ("factual investigation" is well beyond the scope of a ballot title review).

Ballot title referred to the Attorney General for modification.

# APPENDIX

"Be it Enacted by the People of Oregon:

"SECTION 1. (1) As used in this section:

"(a) 'Differential diagnosis' means the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering.

"(b) 'High velocity, low amplitude spinal manipulation or chiropractic spinal adjustment' means impulse adjusting or thrusting by the practitioner's hands of a nature that the patient cannot prevent the motion. The spinal manipulation or adjustment commences at the point where mobilization ends and the motion encounters the elastic barrier or resistance and ends at the limit of anatomical integrity.

"(c) 'Mobilization' means movement applied singularly or repetitively within or at the physiological range of joint motion, without imparting a thrust or impulse, with the goal of restoring joint mobility.

"(2) A person may not perform high velocity, low amplitude spinal manipulation or chiropractic spinal adjustments without having:

"(a) The legal authority to perform differential diagnosis in this state;

"(b) Received a [sic] least 400 hours of hands-on instruction in spinal manipulation or spinal adjustment; and

"(c) Received at least 900 hours of clinical training directly supervised by a licensed physician over a period of at least twelve months.

"(3) Violation of subsection (2) of this section constitutes the unlawful practice of chiropractic and is grounds for a health professional regulatory board, as specified in ORS 676.160 and having authority over a health care practitioner, or the Board of Athletic Trainers to suspend, revoke or refuse to renew the license or registration of or impose other disciplinary action allowed by law against the health care practitioner or athletic trainer who commits the violation.

"SECTION 2. Section 1 of this 2010 Act is not intended to apply retroactively, and nothing in section 1 of this 2010

Act provides grounds for disciplinary action against a health care practitioner or an athletic trainer that are based on conduct occurring before the effective date of this 2010 Act. However, section 1 of this 2010 Act does not prevent a health professional regulatory board, as specified in ORS 676.160 and having authority over a health care practitioner, or the Board of Athletic Trainers from suspending, revoking or refusing to renew the license or registration of or imposing other disciplinary action allowed by law against a health care practitioner or athletic trainer on any ground that was the basis for disciplinary action before the effective date of this 2010 Act.

"SECTION 3. Section 1 of this 2010 Act is added to and made a part of ORS chapter 684."