702 December 7, 2023 No. 36

IN THE SUPREME COURT OF THE
STATE OF OREGON

Hugh ADY,
*Petitioner on Review,*
*and*
Reed SCOTT-SCHWALBACH,
*Petitioner on Review,*
*v.*
Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent on Review.*
(SC S070443 (Control); SC S070446)

On petitions to review ballot title filed September 13, 2023; considered and under advisement on November 7, 2023.

Eric C. Winters, Wilsonville, filed the petition and reply memorandum for petitioner Hugh Ady.

Margaret S. Olney, Bennett Hartman, LLP, Portland, filed the petition and reply memorandum for petitioner Reed Scott-Schwalbach.

Carson L. Whitehead, Assistant Attorney General, Salem, filed the answering memorandum for respondent. Also on the memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, and James, Justices.*

GARRETT, J.

The ballot title is referred to the Attorney General for modification.

------------

* Masih, J., did not participate in the consideration or decision of this case.

**GARRETT, J.**

Chief petitioner Ady and petitioner Scott-Schwalbach separately challenge the Attorney General's certified ballot title for Initiative Petition 30 (2024) (IP 30). We review the ballot title for substantial compliance with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we reject all but two of the arguments raised by petitioners. Because we conclude that the ballot title for IP 30 requires modification in two respects, we refer it to the Attorney General for modification.

## I.   BACKGROUND

If adopted, IP 30 would establish a program to provide state funding to certain families who incur "qualified expenses" for educating their children outside of the public school system. IP 30 § 2(1); *id*. § 2(3)(b). IP 30 defines "qualified expenses" to include tuition and fees at a "participating school," *id*. § 1(5), a defined term that refers to a "provider of educational services as described in ORS 339.030(1)(a), (d), (e)[,] or (h)," *id*. § 1(3). Those statutory references describe children who are exempt from compulsory public school attendance because they attend "a private or parochial school" (ORS 339.030(1)(a)), have a "private teacher" (ORS 339.030(1)(d)), or are home-schooled (ORS 339.030(1)(e)). In other words, one effect of IP 30 would be to allow certain students to receive state funding to attend parochial schools.

All households having an adjusted gross income of $125,000 or less would be eligible to receive those funds. IP 30 § 10.[1] The funding would be provided through a new "Education Savings Account Program" administered by the state. IP 30 §§ 2(2), 2(5), 3, 4.[2] The individual accounts within that program would be funded through transfers by the Department of Education of monies calculated as a

---

[1] For the 2025-26 school year only, the program would be limited to low-income households, defined as 200 percent of the federal poverty level. IP 30 §§ 2(2)(b), 1(1); *see id*. § 7 (program as a whole effective for 2025-26 school year). That would change the following school year. *Id*. § 10 (amending section 2 to add all households up to $125,000); *id*. § 11 (section 10 amendments effective beginning with 2026-27 school year).

[2] The Educational Savings Account itself is singular, but each qualified student has an individual account within it. *See* IP 30 §§ 3(1), 4, 5.

percentage of the "statewide average distribution," *id*. § 2(5) (c)(A), which IP 30 defines as "an amount determined by the Department of Education each school year to equal the average per student distribution of the State School Fund as general purpose grants for all school districts in this state, as adjusted by any weights described in ORS 327.013(1)(c) (A)(i) and (ii)," *id*. § 1(7).

In addition to creating the Education Savings Account Program, IP 30 would change state law regarding the process for inter-district transfers, *id*. § 18, and it would increase the percentage of students in each school district who can be enrolled in virtual public charter schools without district approval from three percent to six percent, *id*. § 21.

A state measure's ballot title has three statutory components: (1) a caption of not more than 15 words that reasonably identifies the measure's subject matter; (2) simple and understandable statements of 25 words or less that describe the result of a 'yes' vote and a 'no' vote; and (3) a concise and impartial statement of no more than 125 words that summarizes the measure. ORS 250.035(2). For IP 30, the Attorney General certified the following ballot title:

> **"Provides public funds for homeschooling, private/religious school tuition, expenses; income eligibility. Establishes cross-district enrollment"**
>
> "**Result of 'Yes' Vote**: 'Yes' vote provides public funds for homeschooling, religious or private tuition, qualified expenses. Income eligibility. Establishes cross-district enrollment, with limitations. Allows additional virtual charter programs.
>
> "**Result of 'No' Vote**: 'No' vote maintains current system of educational funding; no public funds for homeschool, private, or religious school tuition; some publicly funded programming/services available.
>
> "**Summary**: Currently, Oregon resident students are entitled to free, appropriate public education; no public funds for homeschool, private, or religious school tuition; some publicly funded programming/services available. Provides public funds for qualified students through accounts maintained by State Treasury. Annual amount per

student equals 80% of statewide average amount provided to school districts for each child enrolled in public schools. Funds directed from monies otherwise appropriated to State Department of Education for public schools. Initially available to low-income (defined), then to resident students with household adjusted gross income under $125,000 (adjusted annually). Accounts used for homeschooling, religious/private school tuition, qualified expenses. Recipients need not change creed, practices, admissions, curriculum. Establishes cross-district enrollment. Allows additional virtual charter schools. Constitutionality of religious school funding uncertain."

Chief petitioner Ady challenges all parts of the ballot title. Petitioner Scott-Schwalbach challenges the vote result statements and the summary. For the reasons discussed below, we conclude that the Attorney General should modify the "yes" result statement and the summary in two respects, but we reject the other challenges.

## II.  DISCUSSION

### A.  *Caption*

The caption must "reasonably identif[y] the subject matter" of the proposed measure in 15 words or less. ORS 250.035(2)(a). We have explained that the subject matter of a proposed measure is its "actual major effect." *Whitsett v. Kroger*, 348 Or 243, 247, 230 P3d 545 (2010) (internal quotation marks omitted). If the measure has more than one major effect, then the caption must identify "all such [major] effects (to the limit of the available words)." *Id*. We determine the subject matter by examining the words of the proposed measure, as well as "the changes, if any, that the proposed measure would enact in the context of existing law." *Kain/ Waller v. Myers*, 337 Or 36, 41, 93 P3d 62 (2004).

Chief petitioner Ady contends that the caption fails to meet those standards in several ways. For the convenience of the reader, we set out the certified caption again:

**"Provides public funds for homeschooling, private/ religious school tuition, expenses; income eligibility. Establishes cross-district enrollment"**

Chief petitioner Ady's primary objections turn on the use of the words "homeschooling, private/religious school tuition, expenses." As an initial matter, he maintains that the reference to "religious school[s]" is misleading regarding the subject matter: the term "religious school" is not used in either IP 30 or the statutes it references, and he contends that the term is ambiguous in a way that "parochial school" is not.

The Attorney General responds that "religious school" is a synonym for "parochial schools" that is more easily understood by voters. We agree with the Attorney General that the caption is sufficient despite using the term "religious school." It is synonymous with "parochial school," and we do not think the term is ambiguous or misleading. *See Webster's Third New Int'l Dictionary* 1643 (unabridged ed 2002) (defining "parochial school" as "a school maintained by a religious body usu. for elementary instruction").

Chief petitioner Ady also contends that the caption should not refer to the funding of "religious" schools as a major effect and that, by doing so, the caption omits reference to another major effect: that the number of students who could opt into attending a virtual charter school is increased. The Attorney General contends that providing public funds to those entities would be a significant change to existing law. As we understand Ady's response, Ady does not dispute that providing public funds to religious schools *would* be a major effect; Ady's contention, rather, is that this cannot be said to be a major effect of the measure because the constitutional status of such funding is uncertain. That is: On the one hand, the Oregon Constitution restricts the use of public funds to finance religious education. Or Const, Art I, § 5 (prohibiting use of state funds "for the benefit of any religeous [sic], or theological institution"); *see Dickman et al v. School Dist. 62C et al*, 232 Or 238, 366 P2d 533 (1961), *cert den*, 371 US 823 (1962) (concluding that Article I, section 5, had been violated by a school district providing textbooks to pupils of parochial schools without charge). On the other hand, as both Ady and the Attorney General observe, the First Amendment to the United States Constitution may pose a barrier to applying that provision of the Oregon

Constitution in a manner that excludes religious schools from distributions available to nonreligious private schools. *See Espinoza v. Mont. Dep't of Revenue*, 591 US ___, 140 S Ct 2246, 2261, 207 L Ed 2d 679 (2020) ("A State need not subsidize private education. But once a State decides to do so, it cannot disqualify some private schools solely because they are religious.").

To be sure, the provision in IP 30 that would provide public funds for religious schools raises questions under the state and federal constitutions. Whether and to what extent that provision may withstand constitutional scrutiny does not bear, however, on whether it is a major effect of the measure that must be reflected in the caption. The measure, by its terms, purports to provide such funding, and we agree with the Attorney General that that is a major effect of the measure.[3]

Chief petitioner Ady also contends that the caption fails to adequately describe how funds from IP 30's Education Savings Account Program would be limited to "income-eligible students." We disagree; the caption already refers to "income eligibility" after mentioning "tuition, expenses."

Chief petitioner Ady lastly contends that the caption should reflect that the number of students who could opt into attending a virtual charter school is increased. The Attorney General contends that the proposed measure's expansion of virtual charter school enrollment is less significant than the other changes that have been identified in the caption. We agree with the Attorney General. IP 30 is 36 pages of single-spaced text. Given the word constraints for the caption, her decision to focus on other major effects did not render the ballot title noncompliant. *See Buel/Markley v. Rosenblum*, 366 Or 570, 575, 468 P3d 459 (2020) (substantial compliance is a "flexible" standard that "allows room for the exercise of discretion by the ballot title drafter"); *Oregon Taxpayers Union v. Paulus*, 296 Or 476, 480-81, 676 P2d 305 (1984) (when petitioner contended ballot title failed

---

[3] Chief petitioner Ady makes similar arguments regarding references to religious schools in the "yes" result statement, the "no" result statement, and the summary. For the reasons set out here, we also reject those additional contentions.

to include major provisions and it was not possible to identify "all the component parts of the initiative measure in the limited format mandated by statute," then "part of our task is to determine * * * which changes are more important than others," while deferring to the judgment of the Attorney General "where reasonable minds can differ"); *Priestley v. Paulus*, 287 Or 141, 145, 597 P2d 829 (1979) (in "complex measures," word limits on ballot titles "require * * * that the Attorney General weigh the relative importance of the features of the measure in determining what is to be mentioned in the title").

B.   *"Yes" Result Statement*

The "yes" result statement is a "simple and understandable statement" of 25 words or less that "describes the result" if the proposed measure is approved. ORS 250.035 (2)(b).

The "yes" result statement here provides:

"**Result of 'Yes' Vote**: 'Yes' vote provides public funds for homeschooling, religious or private tuition, qualified expenses. Income eligibility. Establishes cross-district enrollment, with limitations. Allows additional virtual charter programs."

Chief petitioner Ady argues that the "yes" result statement should expressly state that funds from the Education Savings Account Program "are parent-directed for the student's benefit." We disagree; the contention is overly specific and does not seem necessary.

Petitioner Scott-Schwalbach challenges the "yes" result statement in two respects.

To begin with, we reject his argument that the "yes" result statement should put "qualified expenses" in quotation marks and add "(defined)." The adjective "qualified" sufficiently conveys that idea that the qualifications for the expenses are contained in IP 30. *See Webster's* at 1858 (defining "qualified," in relevant part, as "having complied with the specific requirements or precedent conditions (as for an office or employment) : ELIGIBLE, CERTIFIED").

Petitioner Scott-Schwalbach is on firmer ground when he points out that the "yes" result statement incorrectly describes a result of IP 30 as "Allows additional virtual charter programs." State law does not cap virtual charter *programs*; it caps *enrollment* in those programs. *See* ORS 338.125(4)(b)(A) (subject to school district permission, enrollment is limited to three percent of the students who reside in the district). IP 30 would amend that statute to increase the enrollment cap to six percent. IP 30 § 21.

The Attorney General argues that doubling the number of students could result in additional virtual charter programs to meet the increased need. Regardless, she asserts that the reference is not likely to confuse voters.

We agree with petitioner Scott-Schwalbach that the "yes" result statement is inaccurate. Accordingly, we refer it to the Attorney General for correction. *See Buel/Markley*, 366 Or at 579-81 (referring "no" result statement and summary to Attorney General for modification when statement of current law was no longer accurate); *Nearman/Miller v. Rosenblum*, 358 Or 818, 830-31, 371 P3d 1186 (2016) ("yes" result statement reference to "immigration verification" was inaccurate and misleading when measure addressed only documentation that United States citizen must provide to register to vote); *Hunnicutt v. Myers*, 333 Or 610, 613, 43 P3d 1114 (2002) (ballot title stated that terms were defined "by citing current statutes," when terms were defined by federal regulations; court required ballot title to be modified).[4]

---

[4] The Attorney General suggests that we exercise our authority to certify the ballot title with a modification to the "yes" result statement, changing "programs" to "enrollment." *See* ORS 250.085(8) (when ballot title does not substantially comply, Supreme Court may either "modify the ballot title and certify the ballot title to the Secretary of State or refer the ballot title to the Attorney General for modification").

We reject the Attorney General's invitation to modify the "yes" result statement ourselves. As we explained in *Straube/McEvilly v. Myers*, 340 Or 395, 399, 133 P3d 897 (2006), we exercise our discretion to make such modifications when the error "is not substantive" and doing so would not "deprive any party of any opportunity to argue any theory that the party wished to advance respecting the requirements of ORS 250.035(2)." *Id.* (error involved was "typographical"); *see also Bates/Dahlman v. Rosenblum*, 355 Or 375, 377-78, 325 P3d 735 (2014) (same). We note—without in any way commenting on the validity of the contention—that petitioner Scott-Schwalbach asserts that merely changing "programs" to "enrollment" would not be sufficient.

C.   *"No" Result Statement*

The "no" result statement must be "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." ORS 250.035(2)(c). The statement "should accurately describe the substance of current law on the subject matter of the proposed measure." *Fletchall v. Rosenblum*, 365 Or 98, 111, 442 P3d 193 (2019) (internal quotation marks and citation omitted).

The Attorney General's "no" result statement is as follows:

> **"Result of 'No' Vote**: 'No' vote maintains current system of educational funding; no public funds for homeschool, private, or religious school tuition; some publicly funded programming/services available."

Chief petitioner Ady argues that the statement should reflect that rejecting the measure means that cross-district enrollment may be blocked by a student's assigned school district, and that virtual private charter school enrollment remains capped at three percent. The Attorney General responds that the "no" result statement correctly focuses on current law as it relates to the most important effects of IP 30; given the word limit, it would not be possible to include the additional information. We agree with the Attorney General in that respect.

Petitioner Scott-Schwalbach maintains that the "no" result statement should expressly state that public funding of religious schools is prohibited by Article I, section 5, of the Oregon Constitution. The Attorney General counters that it would risk confusing voters to discuss constitutional effects only in the "no" result statement for a measure that does not purport to amend the Oregon Constitution. We agree with the Attorney General on that point as well.

D.   *Summary*

Finally, we turn to the summary. The summary of a ballot title must contain "a concise and impartial statement" not exceeding 125 words that "summariz[es] the *** measure and its major effect." ORS 250.035(2)(d). "The

function of the summary is 'to provide voters with enough information to understand what will happen if the measure is approved.'" *Nearman/Miller*, 358 Or at 822 (quoting *Caruthers v. Kroger*, 347 Or 660, 670, 227 P3d 723 (2010)).

The Attorney General's ballot title provides:

"**Summary**: Currently, Oregon resident students are entitled to free, appropriate public education; no public funds for homeschool, private, or religious school tuition; some publicly funded programming/services available. Provides public funds for qualified students through accounts maintained by State Treasury. Annual amount per student equals 80% of statewide average amount provided to school districts for each child enrolled in public schools. Funds directed from monies otherwise appropriated to State Department of Education for public schools. Initially available to low-income (defined), then to resident students with household adjusted gross income under $125,000 (adjusted annually). Accounts used for homeschooling, religious/private school tuition, qualified expenses. Recipients need not change creed, practices, admissions, curriculum. Establishes cross-district enrollment. Allows additional virtual charter schools. Constitutionality of religious school funding uncertain."

Chief petitioner Ady notes that the summary refers to allowing "additional virtual charter schools," instead of informing voters that it would increase the available registration slots for those schools. For the reasons discussed in connection with the "yes" result statement, we agree that that is an error that should be corrected.

Chief petitioner Ady contends that the summary should not call attention to the constitutionality of providing funding for religious schools. The Attorney General argues that it is appropriate to note the uncertainty about the constitutional issues. For the reasons discussed in connection with the caption, we agree with the Attorney General that the note is appropriate.

Petitioner Scott-Schwalbach argues that the summary is inaccurate in referring to "80% of statewide average amount provided to school districts for each child enrolled in public schools." He notes that IP 30 defines "statewide

average distribution"—a phrase that is not found in the summary—to use two weights provided for in ORS 327.013, rather than the full list of weights in that statute. *See* IP 30 § 1(7) (defining term as "average per student distribution" adjusted by weights in ORS 327.013(1)(c)(A)(i) - (ii)); *compare* ORS 327.013(1)(c)(A)(i) - (vi) (to determine the "[w]eighted average daily membership," six different weighting factors are used). He contends that the summary should use the phrase "statewide average distribution" in quotation marks, with the additional notation "(defined)." The change, he argues, would "signal that the term has a special definition that is different from current understanding."

The Attorney General contends that the sentence accurately describes the measure's effect in general terms. She adds that petitioner Scott-Schwalbach does not explain why more detail would aid voters.

We agree with the Attorney General. The term actually used in the summary, "statewide average amount" reads as a simple description; the summary does not use a technical term that might confuse the voters, and it does not give ordinary words an atypical meaning. *See Parrish v. Rosenblum*, 362 Or 96, 106, 403 P3d 786 (2017) ("[T]his is not a situation in which the use of technical, legal, or unique wording drawn from the measure's text results in a caption that is impermissibly misleading or confusing."). Petitioner Scott-Schwalbach does not dispute that the sentence otherwise "provide[s] voters with enough information to understand what will happen if the measure is approved." *Nearman/Miller*, 358 Or at 822 (internal quotation marks and citation omitted).

Petitioner Scott-Schwalbach's argument expressly, and incorrectly, assumes that the summary uses the term "statewide average distribution," which it does not. The proposal to use "statewide average distribution" in quotation marks, followed by "(defined)," would substitute a technical term from IP 30 for the Attorney General's descriptive text. Moreover, "statewide average distribution" is a term apparently unique to IP 30, as the term does not occur in the Oregon Revised Statutes or the Oregon Administrative Rules. Petitioner Scott-Schwalbach thus asks that the

sentence in the summary be changed to make it less descriptive and more obscure. We decline to do so.

Finally, petitioner Scott-Schwalbach contends that the discussion of the income-eligibility limits is misleadingly favorable. He contends that the relevant sentence—"[i]nitially available to low-income (defined), then to resident students with household adjusted gross income under $125,000 (adjusted annually)"—is insufficient because it does not specify the duration of "initially." We do not find the term misleading.

### III.   CONCLUSION

In sum, we conclude that the "yes" result statement and the summary of the certified ballot title should be modified as discussed above.

The ballot title is referred to the Attorney General for modification.